IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CRUM & FORSTER SPECIALTY
INSURANCE COMPANY, CASE NO.:

Plaintiff,

vs.

LANDSOUTH CONSTRUCTION, LLC,
OCEANSIDE 932 CONDOMINIUM
ASSOCIATION, INC., and
OLD DOMINION INSURANCE CO.,

Defendants,
_______________________________________/

**AMENDED COMPLAINT**

Plaintiff, CRUM & FORSTER SPECIALTY INSURANCE COMPANY ("Crum & Forster Specialty"), by and through its undersigned counsel, files this Complaint against Defendants, LandSouth Construction LLC ("LandSouth"), Oceanside 932 Condominium Association, Inc. ("Oceanside") and Old Dominion Insurance Company ("Old Dominion"), as follows:

**PARTIES, JURISDICTION AND VENUE**

1. This is an action for declaratory judgment and for equitable contribution/ subrogation concerning an underlying construction defect case known as *Oceanside 932 Condominium Association, Inc. v. Landsouth Construction LLC*, Case No. 16-2009-CA-007958 pending in the Circuit Court for the Fourth Judicial Circuit in Duval County, Florida.

2. Crum & Forster Specialty is an Arizona corporation with its principal place of business in the State of New Jersey. It is, thus, a citizen of either Arizona or New Jersey, but not of Florida.

3. Oceanside is a Florida corporation with its principal place of business in the Duval County, Florida. Oceanside is the condominium association for Oceanside 932, a condominium building located at 932 First Street North, Jacksonville Beach, Florida (hereinafter "the Condominium").

4. LandSouth is a Georgia limited liability company with its principal place of business in Duval County, Florida. James G. Pyle ("Pyle") is the sole manager/member of LandSouth. At all material times, Pyle was a citizen of the United States and was domiciled and maintained his permanent residence in the State of Florida, thus rendering him a citizen of Florida, such that complete diversity of citizenship exists in this case.

5. Old Dominion is a Florida insurance company with its principal place of business in Duval County, Florida.

6. Complete diversity of citizenship exists in this matter.

7. The amount in controversy exceeds $75,000.00, exclusive of costs, interest and attorneys' fees.

8. Accordingly, this Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §1332.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because the subject construction project is located in Duval County, Florida, the underlying action is pending there, and all of the defendants maintain their principal offices there.

**<u>THE UNDERLYING ACTION</u>**

10. On May 20, 2009, Oceanside filed a lawsuit against LandSouth in Circuit Court in Duval County, Florida, claiming damages as a result defective construction of the

Condominium project (hereinafter "the underlying lawsuit"). A second amended complaint was subsequently filed by Oceanside, a copy of which is attached as Exhibit A.

11. LandSouth was the general contractor on the project, and subcontracted work to various subcontractors.

12. LandSouth subcontracted the exterior stucco and trim work to DPS Exterior Company, Inc. (hereinafter "DPS"). The contract documents required DPS to defend and indemnify LandSouth from all claims in connection with DPS' work on Condominium project and to obtain insurance naming LandSouth as an additional insured.

13. The underlying complaint against LandSouth alleges, among other things, that LandSouth breached implied warranties in "failing to properly construct and seal the Condominium Property's exterior envelope." Underlying Complaint at ¶ 16(k).

14. In response to Oceanside's allegations, LandSouth filed a third-party complaint against its various subcontractors, including DPS.

15. DPS never responded to LandSouth's third-party complaint, and a default was thereafter entered against DPS.

**THE CRUM & FORSTER INSURANCE POLICIES**

16. Crum & Forster Specialty issued four sequential commercial general liability policies to LandSouth as follows: GLO 081006 (eff. 7/1/05 – 7/1/06); GLO 091215 (eff. 7/1/06 – 7/1/07); GLO 101368 (eff. 7/1/07 – 7/1/08); and GLO 131160 (eff. 7/1/08 – 7/1/09).

17. Each of the four policies contains a per occurrence limit of $1 million, a general aggregate limit (other than products/completed operations) of $2 million, and products/completed operations aggregate limit of $2 million. Each of the four policies also contains a self-insured retention.

18. Crum & Forster Specialty also issued three sequential excess policies to LandSouth, XSO 071033 (eff. 7/9/07 – 7/9/08) with a per occurrence and aggregate limit of $2,000,000; XSO 101052 (eff. 7/9/08 – 7/9/09) with a per occurrence and aggregate limit of $5,000,000; and XSO 131015 (eff. 7/1/09 – 6/30/10) with a per occurrence and aggregate limit of $5,000,000, all of which follow the form of the underlying policies. The Crum & Forster Specialty primary and excess policies will be collectively referred to as "the policies." (All policies, with the exception of with the exception of excess policies XSO 101052 and XSO 131015 were attached to the original complaint as Exhibit B and, for ease of filing, have not been reattached to this Amended Complaint.) Policies XSO 101052 and XSO 131015 are attached hereto as Exhibit B.

19. The policies cover LandSouth for those sums it becomes legally obligated to pay because of "property damage" caused by an "occurrence" if the property damage first takes place during the policy period. CG 0001 12/04 at p. 1.

20. The policies define "property damage" as "physical injury to tangible property, including all resulting use of that property."

21. The policies contain a so-called known loss provision, which provides that coverage is not afforded for property damage that an insured or employee of an insured knew had occurred in whole or in part before the policy period, and if an insured or employee of an insured "knew, prior to the policy period, that the 'bodily injury' or 'property damage' occurred, then any continuation, change or resumption of such 'bodily injury' or 'property damage' during or after the policy period will be deemed to have been known prior to the policy period." *Id.*

22. The policies contain an exclusion for "continuous or progressive injury or damage," which excludes property damage that first occurred, or is alleged to have first existed, or begun to occur prior to the effective date of the policy, regardless of whether (1) the property damage continued to occur, for any reason, on or after the effective date of the policy, and/or (2) repeated or continuous exposure to conditions, which caused such property damage, occurred on or after the effective date of the policy, and caused additional, progressive or further property damage. CFS GL 163 04/05.

23. The policies exclude property damage which would not have occurred, in whole or in part, but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time. CG 2155 09/09.

24. The policies exclude property damage which would not have occurred, in whole or in part, but for the actual, alleged or threatened existence of or presence of any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage. CG 2167 04/02. This exclusion also applies to "any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, 'fungi' or bacteria, by any insured or by any other person or entity. *Id.*

25. The policies exclude property damage arising directly or indirectly out of the insured's "exterior insulation and finish system" work and/or "direct exterior finish system" work, or any part of either system, including accessories, flashings, caulkings or sealants. This exclusion includes "any work or operations with respect to any exterior component,

fixture or feature of any structure if an 'exterior insulation and finish system' or a 'direct exterior finish system' is used on any part of that structure." CFS GL 216.

26. The policies exclude "property damage for which the insured is obligated to pay by reason of liability in a contract or agreement." *See* Exclusion B.

27. The policies exclude property damage to "that particular part on which [the insured] or any contractors or subcontractors working directly or indirectly on [the insured's] behalf are performing operations, if the 'property damage' arises out of those operations." *See* Exclusion J(5).

28. The policies exclude property damage to "that particular part of any property that must be restored, repaired or replaced because [the insured's] work was incorrectly performed on it." *See* Exclusion J(6).

29. The policies exclude property damage "to [the insured's] product arising out of it or any part of it." *See* Exclusion K.

30. The policies exclude property damage "to [the insured's] work arising out of it or any part of it and included in the products-completed operations hazard" to the extent the work was not performed by a subcontractor. *See* Exclusion L.

31. The policies exclude property damage "to impaired property or property that has not been physically injured arising out of a defect, deficiency, inadequacy or dangerous condition in [the insured's] product or [the insured's] work." *See* Exclusion M.

32. The policies provide that they are excess over any other insurance available to LandSouth as an additional insured from any subcontractor or on any other basis, whether such other insurance is primary, excess, or contingent. CFS GL 114 05/05.

33. Crum & Forster Specialty is defending LandSouth in the underlying lawsuit subject to a reservation of rights based on these terms, provisions, exclusions and endorsements.

## THE OLD DOMINION POLICIES

34. Old Dominion issued two sequential contractors policies to DPS Exterior Company, effective 7/25/05 – 7/25/07, with per occurrence limits of $1,000,000 and aggregate limits of $2,000,000. A copy of the Old Dominion policy is attached as Exhibit C.

35. LandSouth is a specifically named additional insured under the Old Dominion policies.

36. The Old Dominion policies cover LandSouth for liability arising out of both its ongoing operations and completed operations. 64-8218 8/03.

37. The Old Dominion policies provide that "if there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance..." BP 0009 01/97.

## COUNT I - DECLARATORY JUDGMENT

38. Crum & Forster Specialty realleges and incorporates by reference its allegations in paragraphs 10 through 37 above.

39. An actual, present and existing controversy has arisen between Crum & Forster Specialty and LandSouth, Oceanside and Old Dominion, as to Crum & Forster Specialty's obligations, if any, with respect to the claims being asserted against LandSouth in the underlying lawsuit.

40. Based on the policy provisions, exclusions and endorsements cited above, it is likely that none of the damages Oceanside is seeking to recover from LandSouth in the underlying litigation are covered under the applicable policies, as described more fully below.

41. The damage sought by Oceanside for the cost of repairing and replacing defective construction does not constitute "property damage" as defined by the policies and by applicable Florida law and is otherwise excluded by the so-called business risk exclusions.

42. The damage sought by Oceanside which first occurred during ongoing operations in 2006 and early 2007 does not constitute "property damage" in the first instance and is otherwise excluded by Exclusions J(5) and J(6). Any continuation of such damage is excluded under the subsequent policies by the known-loss and/or continuous or progressive damage exclusions.

43. The damage sought by Oceanside relating to mold is excluded, regardless of whether any other cause contributed concurrently or in any sequence to the mold damage.

44. The damage sought by Oceanside relating to any exterior fixture, feature or component, as defined by the EIFS exclusion, is excluded.

45. In addition to the above, as to the damage sought by Oceanside relating to DPS' exterior stucco and trim work, the Old Dominion policy provides primary coverage to LandSouth in relation to the Crum & Forster Specialty policies.

46. There is a *bona fide*, actual, present need for the declaration of the parties' rights and obligations under the subject policies.

47. This Court's declaration will confer certainty on the parties with respect to their rights, duties and obligations under the Policy and will, therefore, serve the interests of justice.

**WHEREFORE**, Crum & Forster Specialty requests that this Court determine the extent of its duties, if any, to indemnify and defend LandSouth under the referenced policies with respect to the underlying lawsuit filed by Oceanside, and to grant such other relief as the Court deems just and proper.

## COUNT II – EQUITABLE CONTRIBUTION/SUBROGATION

48. Crum & Forster Specialty realleges and incorporates by reference paragraphs 10 through 37 above.

49. By virtue of the indemnification agreement contained in the subcontract between LandSouth and DPS, as well as by LandSouth's status as a named additional insured under the Old Dominion policy, Old Dominion owes the primary duty to defend and indemnify LandSouth with respect to the claims of Oceanside against LandSouth relating to DPS' work on the Condominium project.

50. Old Dominion has wrongfully refused to defend LandSouth and wrongfully failed to acknowledge its status as the primary insurer for the losses stemming from DPS' work.

51. As a result of Old Dominion's refusal to acknowledge its status as the primary carrier and provide a defense and indemnity to LandSouth, Crum & Forster Specialty has incurred the cost of defending LandSouth with respect to the claims relating DPS' work and has been called upon to indemnify LandSouth with respect to those claims – obligations that should be borne by Old Dominion.

52. Crum & Forster Specialty, in its excess capacity *vis a vis* Old Dominion based on the indemnity agreement between DPS and LandSouth and LandSouth's status as an additional insured under the Old Dominion policy, is entitled to reimbursement from Old

Dominion of all defense costs incurred in defending the claims relating to DPS' scope of work and any indemnity payments it may be ordered to make with respect to DPS' work, under theories of equitable contribution and subrogation.

**WHEREFORE**, Crum & Forster Specialty requests that this Court determine the extent of Old Dominion's duties to defend and indemnify LandSouth under the referenced policies with respect to the underlying lawsuit filed by Oceanside as between Old Dominion and Crum & Forster Specialty, to declare that the Old Dominion policies are primary to the Crum & Forster policies, and to grant such other relief as the Court deems just and proper.

Dated January 4, 2012.

Respectfully submitted,

TRAUB LIEBERMAN STRAUS
& SHREWSBERRY LLP

LAUREN S. CURTIS, Esq.
FBN: 150940
lcurtis@traublieberman.com
MICHAEK K. KIERNAN, Esq.
FBN: 391964
mkiernan@traublieberman.com
First Central Tower
360 Central Avenue, Suite 1000
St. Petersburg, Florida 33701
(727) 898-8100 (Tel)
(727) 895-4838 (Fax)
Counsel for Plaintiff,
Crum & Forster Specialty Ins. Co.